[Docket No. 245.]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LEROY BROOKS,<br><br>Defendant. | Crim. No. 14-382 (RMB)<br><br>**MEMORANDUM ORDER** |

Defense Counsel Robert C. Wolf, Esq. moves to be relieved as counsel. [Docket No. 245.] The Court appointed Wolf solely to represent Defendant Leroy Brooks in connection with a selective enforcement claim after the Third Circuit remanded this matter for the Court to consider a motion for discovery to support such a claim. Wolf certifies to the Court that, given the discovery produced to date, he cannot assert a non-frivolous selective enforcement claim on Brooks' behalf. Given this Court's discovery rulings, he also certifies that he cannot think of any additional discovery that would support a selective enforcement claim. For the below reasons, this Court **GRANTS** Wolf's motion to be relieved as counsel.

I.   BACKGROUND

   a.   The Stash House Robbery Sting

The parties are familiar with the facts, and the Court writes primarily for them. A federal jury convicted Brooks of conspiring to commit Hobbs Act robbery, conspiring to traffic cocaine, possessing a firearm as a felon, and carrying a firearm during a crime of violence. Brooks' convictions stem from his involvement in a stash house robbery sting operation orchestrated by the Alcohol, Tobacco, Firearms, and Explosives Bureau (ATF). The ATF had been investigating Alexander Morales for drug trafficking and firearm offenses.

1

Undercover ATF agents hatched a sting operation and approached Morales with the idea to rob a fictional drug stash house. The undercovers told Morales that a Mexican drug cartel stored many kilograms of cocaine at this fictional stash house. Intrigued by the idea, Morales recruited Brooks and another to participate in the stash house robbery.

On the day of the planned robbery, Brooks met with his coconspirators and an undercover ATF agent at a prearranged location. Brooks brought a bag with him and placed it in a hidden compartment in the undercover's car. During the meeting, Brooks asked many questions about the stash house and the robbery, such as the men guarding the house. Law enforcement officers eventually arrested Brooks and his coconspirators. Officers searched the bag that Brooks placed in the undercover's car, recovering multiple firearms and masks.

Before trial, Brooks moved for discovery to support a potential motion to dismiss the indictment for selective enforcement and racial profiling. [Docket No. 33.] Brooks, an African-American, argued the ATF engaged in discriminatory law enforcement practices by targeting African-Americans and other minorities in its stash house robbery sting operations. [*Id*.] He sought a host of information on the ATF's stash house robbery operations. [*Id*.] Without that discovery, Brooks acknowledged he couldn't shoulder his burden to prove selective enforcement. [*Id*.]

A selective prosecution or enforcement claim (like the one Brooks contemplated) imposes a "demanding" standard to meet. *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "A defendant challenging a criminal prosecution at either the law enforcement or prosecution inflection points must provide 'clear evidence' of discriminatory effect and discriminatory intent [(sometimes called discriminatory purpose)]." *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017) (footnotes and citations omitted). At the time

of Brooks' discovery motion, the Supreme Court's decisions in *Armstrong* and *United States v. Bass*, 536 U.S. 862 (2002) governed discovery requests to pursue a selective prosecution claim. *Armstrong*, 517 U.S. at 469-71; *Bass*, 536 U.S. at 863-64. Under the *Armstrong/Bass* framework, a defendant seeking discovery to support a selective prosecution claim "must show some evidence of both discriminatory effect and discriminatory intent." *Bass*, 536 U.S. at 863. Yet when Brooks moved for discovery, neither the Supreme Court nor Third Circuit had addressed whether the *Armstrong/Bass* framework applied to selective enforcement claims.

Following argument on Brooks' discovery motion (and others), this Court denied his discovery request. [Docket No. 42.] Applying *Armstrong*, the Court found Brooks had not made the "credible showing that similarly situated individuals were not prosecuted," reasoning "there is no claim that a non-Hispanic/non-African-American individual in the conspiracy was not prosecuted." [Hr'g Tr. 23:15 to 19 (Docket No. 44).] The Court also observed that the ATF did not bring Brooks into the conspiracy. [*Id.* at 23:20 to 22.] Said differently, the Court observed, and the parties agreed, that the ATF did not target Brooks. [*Id.*; *see also id.* at 3:7 to 12; 8:12 to 15; 12:18 to 13:4; 17:14 to 18.] Brooks later filed a second motion for discovery to support a potential selective enforcement claim. [Docket No. 56.] The Court denied that motion too. [Docket No. 75.]

Following his convictions, the Court sentenced Brooks to a total 270 months imprisonment followed by a five-year term of supervised release. [Docket No. 128.]

b. **Brooks' Appeal**

Brooks appealed his convictions and sentence, raising several challenges including this Court's rulings on his pretrial motions for discovery on his selective enforcement claim. [Docket No. 129.] After Brooks filed his notice of appeal, the Third Circuit decided

3

*Washington*—articulating for the first time the discovery standard for selective enforcement claims. 869 F.3d at 220-21. The *Washington* court held that "putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong/Bass* framework." *Id.* at 220. In cases involving selective enforcement claims, the Third Circuit explained "a defendant need not, at the initial stage, provide 'some evidence' of discriminatory intent, or show that (on the effect prong) similarly situated persons of a different race or equal protection classification were not arrested or investigated by law enforcement." *Id.* at 221. Rather, to obtain discovery to support a selective enforcement claim, a defendant must make "a proffer that shows 'some evidence' of discriminatory effect." *Id.* at 220-21. That "proffer must contain reliable statistical evidence, or its equivalent, and may be based in part on patterns of prosecutorial decisions . . . *even if* the underlying challenge is to law enforcement decisions." *Id.* at 221 (emphasis in original, footnote omitted). It also "must be strong enough to support a reasonable inference of discriminatory intent and non-enforcement." *Id.*

With *Washington* in hand, the Third Circuit decided Brooks' appeal. *United States v. Brooks*, 734 F. App'x 120 (3d Cir. 2018). The Circuit rejected all of Brooks' arguments except for his appeal of this Court's decision to deny discovery motions to support a selective enforcement claim. *Id.* at 124-25. The Circuit vacated this Court's discovery order and remanded Brooks' case "for limited post-judgment proceedings consistent with *Washington*." *Id.* at 125. Besides the limited remand, the Circuit affirmed Brooks' convictions and sentence. *Id.*

4

### c. Post-Remand Proceedings

On remand, Brooks moved for discovery to support a selective enforcement claim. [Docket No. 152.] This Court granted that motion, ordering the Government to turn over a slew of information in the ATF files on stash house robbery sting operations. [Docket Nos. 154-55.] Over a year later, Brooks' counsel asked this Court to conduct an in-camera review of certain documents that the Government had redacted. [Docket No. 167.] The Court found the request improper, finding Brooks appeared to "seek documents/information that goes well beyond" the Court's earlier rulings granting discovery. [Docket No. 168.] The Court eventually denied that request as the parties apparently worked out their discovery dispute. [Docket No. 186.]

Brooks then flooded this Court with a host of motions, ranging from multiple motions for compassionate release to uncounseled motions. [Docket Nos. 169-70, 173.] Brooks' then-counsel moved to be relieved because of irreconcilable differences. [Docket No. 188.] Brooks also asked for a new attorney. [Docket No. 189.] The Court granted counsel's request, and appointed Wolf to represent Brooks in connection with the Third Circuit's limited remand on discovery for a selective enforcement claim. [Docket Nos. 194, 196-97.]

A few months after his appointment, Wolf moved for additional discovery to support a selective enforcement claim on Brooks' behalf. [Docket No. 218.] After reviewing the discovery the Government produced and conducting his own research, Wolf requested that the Court order the Government to produce certain documents prepared by ATF Special Agent Richard Zayas on "the selection process" the ATF employs "when targeting defendants in reverse stash house robbery stings[]" (the Zayas Materials). [Cert. of Robert C. Wolf, Esq. ¶¶ 10-11 (Wolf Cert. I) (Docket No. 218-1).] Wolf certified that the Government

5

turned over the Zayas Materials in another prosecution involving a selective enforcement claim pending in the United States District Court for the Northern District of Illinois. [*Id.* at ¶¶ 13, 16.] Wolf asserted the Zayas Materials were relevant because they appear to provide directions to implementing ATF policy on stash house robbery sting operations. [*Id.* at ¶ 17.]

To expedite discovery, this Court ordered the Government to produce the Zayas Materials for an in-camera review to "determine whether the materials have any relevance to the narrow issue on remand." [Docket No. 219.] After conducting the review, the Court denied Brooks' motion for discovery of the Zayas Materials. [Docket No. 220.] The Court found those materials "do not advance [Brooks'] claim at all." [*Id.*] Brooks immediately appealed that order, but ultimately withdrew the appeal. [Docket Nos. 221, 225.]

### d. Wolf's Request to be Relieved as Counsel

After denying Brooks' discovery motion for the Zayas Materials, Brooks filed an uncounseled motion for a new attorney so new counsel "could attempt to negotiate a plea bargain . . . in advance of any further litigation and/or appeals being filed in [his] case." [Docket No. 227.] The Court denied that motion, ordering Wolf and the Government to provide a status update on Brooks' selective enforcement claim. [Docket No. 236.]

In his status report, Wolf explained his efforts to represent Brooks on his selective enforcement claim (the Status Report). [Docket No. 238.] He outlined his research efforts and communications with other defense counsel pursuing selective enforcement claims on behalf of their clients. [*Id.*] He also discussed his efforts to obtain more information from the Government, and his unsuccessful attempts to compel discovery. [*Id.*] Ultimately, Wolf found there "would be no pathway to a valid legal claim of [s]elective [e]nforcement for . . . Brooks." [*Id.*] Wolf explained that without more discovery, "there is no basis of proof for

6

discriminatory purposes and that, therefore, the motion [to dismiss for selective enforcement] would be baseless." [*Id.*] Wolf then offered to file a brief under *Anders v. California*, 386 U.S. 738 (1967) to tell the Court that Brooks' selective enforcement "claim is baseless." [*Id.*]

After the Status Report, Wolf moved to be relieved as counsel. [Docket Nos. 240, 245.] Like he did in the Status Report, Wolf outlined his representation of Brooks on the selective enforcement claim. [Cert. of Robert C. Wolf, Esq. ¶¶ 1-10 (Wolf Cert. II) (Docket No. 245).] Given his research and the Court's rulings, Wolf "can conceive of no further discovery that [he] believe[s] has not been turned over, that would aid . . . Brooks in pursuing a non-frivolous claim of a [d]efense of [s]elective [e]nforcement." [*Id.* at ¶ 11.] With the current, available discovery, Wolf has determined "that there are no further non-frivolous issues to raise with respect to a [s]elective [e]nforcement claim." [*Id.* at ¶ 12.] Accordingly, Wolf asks to be relieved as counsel. [*Id.* at ¶ 13.]

## II. DISCUSSION

New Jersey Rule of Professional Conduct (RPC) 3.1 bars lawyers from asserting frivolous claims or arguments. L. Civ. R. 103.1(a) ("The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of members of the bar admitted to practice in this [District.]"). Counsel's ethical obligations require counsel to only pursue claims or arguments if he "reasonably believes that there is a basis in law and fact for doing so[.]" RPC 3.1. In criminal proceedings, defense counsel "may nevertheless so defend the proceeding as to require that every element of the case be established." *Id.* But after conviction, a criminal defendant loses the presumption of innocence. *McCoy v. Ct. of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988). Following a

criminal defendant's conviction, "the lawyer may not ignore his or her professional obligations." *Id.* Indeed,

> A lawyer, after all, has no duty, indeed no right, to pester a court with frivolous arguments, which is to say arguments that cannot conceivably persuade the court, so if he believes in good faith that there are no other arguments that he can make on his client's behalf he is honor-bound to so advise the court and seek leave to withdraw as counsel.

*Id.* (quoting *United States v. Edwards*, 777 F.2d 364, 365 (7th Cir. 1985)). Courts should grant motions to be relieved as counsel if continued representation will result in appointed counsel violating the Rules of Professional Conduct. *See, e.g.*, *United States v. Oberoi*, 331 F.3d 44, 47-48 (2d Cir. 2003) ("[I]f forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility and possibly subject the attorney to sanctions, it will be an abuse of discretion not to grant the motion to withdraw.").

In *Anders*, the United States Supreme Court addressed criminal defense counsel's obligations when representing a defendant on a direct appeal. 386 U.S. at 744. The *Anders* Court held that "if counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw[,]' *id.*, because an appeal must proceed in "good faith," *id.* at 741. To withdraw as counsel under *Anders*, defense counsel must file a brief pointing "to anything in the record that might arguably support the appeal." *Id.* at 744. After receiving an *Anders* brief, a reviewing court may allow counsel to withdraw and dismiss the appeal if the court finds the appeal "wholly frivolous." *Id.* When faced with a motion to withdraw under *Anders*, the Third Circuit first determines whether the counsel's motion complies with *Anders*, and if it does, the Circuit then conducts an independent review of the record for any non-frivolous issues. *See, e.g.*, *United States v. Langley*, 52 F.4th 564, 568-69 (3d Cir. 2022). "[C]ounsel

8

satisfies [his] *Anders* obligation if [he]: (1) demonstrates to this Court that [he] has thoroughly examined the record in search of appealable issues, and (2) explains why those issues are frivolous." *Id.* at 569.

While *Anders* applies to a criminal defendant's appellate counsel on direct appeal, this Court looks to it for guidance to resolve Wolf's request to be relieved as counsel here. Defense counsel has "an ethical obligation to refuse to prosecute a frivolous appeal[]" or post-conviction proceedings. *See McCoy*, 486 U.S. at 436. A selective enforcement claim is not a defense to the merits of a criminal prosecution. *Washington*, 869 F.3d at 222; *see also Armstrong*, 517 U.S. at 463. Following conviction, a successful selective enforcement claim results in the dismissal of the indictment, in whole or in part. *Washington*, 869 F.3d at 223.

Having reviewed the Status Report, Wolf's moving papers, and the record here, the Court grants Wolf's request to be relieved as counsel. The Status Report and Wolf's moving papers reveal all the work he performed on Brooks' behalf to bring a potential selective enforcement claim. Wolf has certified to the Court that the discovery produced so far, in his view, will only satisfy the "discriminatory effect" element for a selective enforcement claim. [Docket No. 238.] He has no discovery to show the "discriminatory purpose" element. [*Id.*] Based on his review of the discovery produced here (and discovery produced in other cases), Wolf sees "no pathway to a valid" selective enforcement claim. [*Id.*] Given Wolf's representations and the record, the Court finds he has thoroughly examined the discovery materials and adequately explained why he cannot, consistent with his ethical obligations, pursue a selective enforcement claim on Brooks' behalf. *See Anders*, 386 U.S. at 744 (requiring appellate counsel to conduct a "conscientious examination" of the record before seeking to withdraw as counsel).

The Court also notes the Third Circuit ordered a limited remand for this Court to reexamine Brooks' discovery request given *Washington*. *Brooks*, 734 F. App'x at 125. After remand, the Court heard Brooks' motion for discovery, granted it, ordered discovery, and entertained additional discovery requests. Accordingly, the Court has satisfied the Third Circuit's remand.

### III. CONCLUSION

For the above reasons, it is on this **4th** day of **October**, **2024**, hereby:

**ORDERED** that Robert C. Wolf, Esq.'s Motion to be Relieved as Counsel is **GRANTED** (Docket No. 245); and it is finally

**ORDERED** that Wolf shall provide a copy of this Memorandum Order to Defendant Leroy Brooks and notify the Court upon doing so.

                                                                          **s/Renée Marie Bumb**
                                                                          RENÉE MARIE BUMB
                                                                          Chief United States District Judge